USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/30/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

TRUSTEES OF THE NEW YORK CITY                         :
DISTRICT COUNCIL OF CARPENTERS                        :
PENSION FUND, WELFARE FUND,                            :
ANNUITY FUND, and APPRENTICESHIP,                     :
JOURNEYMAN RETRAINING,                                :
EDUCATIONAL AND INDUSTRY FUND,                        :
TRUSTEES OF THE NEW YORK CITY                         :         26-CV-00556 (VEC)
CARPENTERS RELIEF AND CHARITY                         :
FUND, and THE CARPENTER CONTRACTOR                    :         OPINION AND ORDER
ALLIANCE OF METROPOLITAN NEW                          :
YORK,                                                 :
                                                      :
                                   Petitioners,       :
                                                      :
                -against-                             :
                                                      :
EXSERV INC.,                                          :
                                                      :
                                   Respondent.        :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund,

Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and

Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, and the

Carpenter Contractor Alliance of Metropolitan New York (collectively, "Petitioners" or the

"Funds") request that the Court confirm an arbitration award against Exserv, Inc. ("Exserv" or

"Respondent").  Petitioners also seek to recover attorneys' fees and costs incurred in bringing

this Petition.  To date, Respondent has not opposed the Petition, nor has it appeared before this

Court.[1]  For the following reasons, the Petition is GRANTED.

---

[1]        On March 2, 2026, Petitioners filed a letter requesting the Petition be reviewed as an unopposed motion for
summary judgment.  *See* Dkt. 10.

1

## BACKGROUND

Petitioners bring this action under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185, to confirm and enforce an arbitration award rendered under a collective bargaining agreement (the "CBA," *see* Dkt. 1-3) involving the New York City District Council of Carpenters (the "Union") and Respondent, a New York corporation and employer.  Pet., Dkt. 1 ¶¶ 1,7.  Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated under the Employee Retirement Income Security Act of 1974.  *Id.* ¶ 4.  Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  *Id.* ¶ 5.  Petitioner Carpenter Contractor Alliance of Metropolitan New York (collectively with the ERISA Funds and the Charity Fund, the "Funds") is a not-for-profit corporation.  *Id.* ¶ 6.  The Union is a labor organization and the certified bargaining representative for certain employees of Exserv.  *See* CBA, Art. III § 2.

On July 1, 2011, the Union and the New York Trade Show Contractors Association entered into the CBA, which, by its terms, was effective from July 1, 2011, to June 30, 2017. *See generally id.*  A subsequent Memorandum of Understanding extended the covered period to June 30, 2022.  *See generally id.*  As a member of New York Trade Show Contractors Association, Exserv agreed to be bound by the terms of the CBA.  *See generally* Proof of Membership, Dkt. 1-1.

The CBA requires Respondent to make contributions to the Funds for each hour worked by its covered employees.  CBA, Art. XVI § 1.  The CBA also requires Respondent to make its books and records available upon the Trustees' request to ensure that Respondent is making the necessary benefit fund contributions as required by the CBA.  *Id.* § 2.  In the event of a dispute over Fund contributions, the CBA requires the parties to engage in mandatory, binding arbitration.  *Id.* § 14.  Should the Funds need to arbitrate a dispute or sue for unpaid contributions, the Funds may collect: (1) any unpaid contributions, (2) interest on the unpaid contributions determined at a prime rate plus two percent, (3) the greater of: (a) the amount of the interest  on the above unpaid contributions or (b) liquidated damages of twenty percent of the amount of the unpaid contributions, (4) reasonable attorneys' fees and costs, and (5) other appropriate legal or equitable relief.  *See id.* § 13(a).

Prior to June 2025, the Funds initiated an audit of Respondent for the period of January 1, 2023, through April 23, 2025.  *See* Pet. ¶¶ 22, 24.  Respondent did not produce its books and records or otherwise cooperate with the auditors; as such, the Funds conducted an estimated audit pursuant to the Collection Policy, *see id*. ¶¶ 23–24, and, pursuant to the CBA, initiated arbitration proceedings on June 5, 2025, *see id.* ¶¶ 25–26.  Respondent did not appear at the arbitration hearing nor request an adjournment or extension of time to appear.  *See* Award, Dkt. 1-11 at 2.  On July 2, 2025, the arbitrator rendered an award (the "Award") in Petitioners' favor, finding that (1) Respondent was bound by the CBA, (2) pursuant to the CBA, Respondent was required to make its books and records available for an audit, and (3) Respondent violated the CBA by refusing to make its books and records available within seven days of the Funds' audit notice.  *Id.*  Accordingly, the arbitrator ordered Respondent to make its books and records available to Petitioners within 30 days of the Award's issuance.  *Id.*  The arbitrator also awarded

3

Petitioners a total of $1,328,741.79, including (1) a principal amount of $1,003,737.15, (2) interest of $121,757.21, (3) liquidated damages of $200,747.43, (4) attorneys' fees of $1,500.00, and (4) arbitration costs of $1,000.00, with interest accruing at 9.5 percent from the date of the Award.  *Id.* at 2–3; *see also* Pet. ¶¶ 27–29.

Following issuance of the Award, on July 14, 2025, Petitioners served Respondent with a demand for payment of, and compliance with, the Award.  *See* Dkt. 1-12.  To date, Respondent has not paid the amount owed nor made its books and records available for an audit.  Pet. ¶¶ 30–31.  On January 21, 2026, Petitioners filed suit, asking the Court to confirm the Award and seeking judgment against Respondent.  *Id.* ¶ 43.  Respondent has been properly served, *see* Dkts. 8, 9,  but has not responded to the Petition nor appeared in this action.

## DISCUSSION

### I.       Arbitration Award

#### A.       Legal Standard

Petitioners have moved to confirm the arbitration award.  Pursuant to the Federal Arbitration Act ("FAA"):

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.  "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."[2]  *Hall*

---

[2]      The FAA provides that courts may vacate an arbitration award only where: (1) the award was procured by fraud, corruption, or undue means; (2) the arbitrator was evidently partial or corrupt; (3) the arbitrator was guilty of misconduct; or (4) the arbitrator exceeded his powers or imperfectly executed them such that a final and definite award was not made.  *See* 9 U.S.C. § 10; *see also Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007) (arbitration award should be vacated "only upon finding a violation of one of the four statutory

*St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  Federal labor policy also favors the confirmation of arbitration awards.  *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.").  Therefore, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984),[3] and the Court's review of an arbitration award is exceptionally deferential, *see Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007) (noting that the Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process").  To pass muster, the arbitration award need only draw its essence from the contract from which it arises, *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016), and the Court need only find a "barely colorable justification" to support a conclusion that the arbitrator has acted within the scope of his authority,  *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  Only "manifest disregard" of the law constitutes an abuse of authority.  *See id*.

That said, when a petition to confirm an arbitration award is unopposed, the Court cannot simply enter a default judgment in favor of the petitioner.  *See id.* at 109.  Rather, the Court must treat the action as an unopposed motion for summary judgment, making its determination based on the record accompanying the petition to confirm.  *See id.* at 109–110.  Accordingly, the

---

bases [enumerated in the FAA], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law" (cleaned up)).

[3]         Under Section 301 of the LMRA, federal courts have jurisdiction over labor contract disputes regardless of citizenship or amount in controversy.  29 U.S.C. § 185(a).

undisputed facts must show that the moving party is entitled to judgment as a matter of law. *See id.* at 110; *see also* Fed. R. Civ. P. 56(a).

> B.    Application

Here, there is no doubt that the arbitrator acted within the scope of his authority.  First, the CBA and Collection Policy expressly require that collection disputes be arbitrated.  *See* CBA, Art. XII §§ 2–3; Collection Policy § VI(1).  The CBA further provides that an arbitrator's award "shall be final and binding upon the parties hereto . . . and shall be wholly enforceable in any court of competent jurisdiction."  CBA, Art. XVI § 14.  Petitioners properly filed the Petition within one year of the Award, and the Award has not been vacated, modified, or corrected.  *See* Pet. ¶¶ 32–33.  Thus, the statutory requirements for confirming the arbitration award have been met.  *See* 9 U.S.C. § 9.[4]

Second, the Award plainly draws its essence from the CBA and the estimated audit. As previously noted, Respondents are bound by the CBA and the Collection Policy.  In accordance with the CBA, Art. XVI § 13(a), the arbitrator awarded Petitioners the estimated deficiency of $1,003,737.15, plus interest of $121,757.21, liquidated damages of $200,747.43; attorneys' fees of $1,500, and the arbitrator's fee of $1,000 (for a total award of $1,328,741.79).  Audit, Dkt. 1-9.  Furthermore, there is no evidence that the arbitrator was aware of, and consciously disregarded, contrary law.  *See D.H. Blair & Co.*, 462 F.3d at 110–11 (noting that manifest disregard requires demonstrating that the arbitrator "actually knew about the relevant rule of law" but did not apply it).  The Court concludes, therefore, that the arbitrator acted within the scope of his authority.

---

[4]      No statutory exceptions apply because there is no indication of corruption, partiality, or misconduct, and the arbitrator did not exceed his powers.  *See* 9 U.S.C. § 10(a).

## II.    Attorneys' Fees and Interest

### A.    Legal Standard

Attorneys' fees and costs are generally not recoverable from an opposing party, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Empire Masonry, LLC*, No. 19-CV-1233, 2019 WL 11270457, at *2 (S.D.N.Y. June 5, 2019), and the LMRA does not provide for recovery of attorneys' fees in an action to confirm an arbitration award, *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).  The Court can, however, award a petitioner reasonable attorneys' fees when there has been a refusal "to abide by an arbitrator's decision without justification."  *Id*.  Additionally, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993).

### B.    Application

Respondent has not abided by the Award, nor has it presented any justification for its lack of compliance.  As such, and per the terms of the CBA, an award of attorneys' fees and costs is warranted.  *See* CBA, Art. XVI § 13(a)  (providing that if a matter proceeds to arbitration or litigation, the employer is responsible for attorneys' fees and any other expenses incurred by the Funds in collecting the delinquent contributions); CBA, Art. XII § 3 (requiring the employer to compensate the Funds for reasonable attorneys' fees and court costs upon confirmation of the arbitration award or in the event of formal court proceedings to collect contributions); *see also* Collection Policy § V(6) ("Attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection

Counsel in collection efforts or in enforcing the Board of Trustees' rights to payroll reviews and/or audits."); CBA, Art. XVI § 10 ("Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust . . . and by all . . . policies . . . including but not limited to, the [Collection Policy].").

Nevertheless, the Court finds that Petitioners' counsel's requested fees are excessive. Petitioners seek $2,904.60 in attorneys' fees for 10.5 hours of work, based on hourly rates of $430 for partner attorneys, $325 for associate attorneys, and $163 for legal assistants, *see* Dkt. 10-1 at 4,[5] to draft a nine-page petition to confirm the Award and a nine-page memorandum of law consisting of largely recycled case law. In other substantially similar cases before this Court, Petitioners' counsel has been awarded, on average, four hours' worth of fees per petition.[6] Thus, the Court concludes that a fifty percent reduction (*i.e.*, to 5.25 hours) to the total hours billed is

---

[5]     The rates requested are reasonable and generally consistent with the Court's determinations in similar matters. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Rici Corp.*, No. 24-CV-1853, 2024 WL 2874587, at *4 (S.D.N.Y. June 6, 2024) (awarding attorneys' fees at hourly rate of $310 for associate attorneys); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. J&V Locks & Doors, Inc.*, No. 25-CV-113, 2025 WL 1504695, at *3 (S.D.N.Y. May 27, 2025) (awarding attorneys' fees at hourly rate of $410 for partner attorneys); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. AAA Windows & Doors Corp.*, No. 25-CV-2646, 2025 WL 1898539 at *7 (S.D.N.Y. July 8, 2025) (awarding fees at hourly rate of $163 for legal assistants).

[6]     *See, e.g.*, *Rici Corp.*, 2024 WL 2874587, at *4 (awarding attorneys' fees for four hours of work); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Buildtask, LLC*, No. 21-CV-2260, 2021 WL 3544720, at *3 (S.D.N.Y. Aug. 10, 2021) (awarding attorneys' fees for 1.7 hours of work); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Saheet Constr. Corp.*, No. 20-CV-2646, 2020 WL 5237799, at *2 (S.D.N.Y. Sept. 2, 2020) (awarding attorneys' fees for 4.7 hours of work); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Greenebuild LLC*, No. 20-CV-2577, 2020 WL 3962123, at *2 (S.D.N.Y. July 13, 2020) (awarding attorneys' fees for 6.1 hours of work); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Ogee Constr. LLC*, No. 20-CV-2194, 2020 WL 3488894, at *2 (S.D.N.Y. June 25, 2020) (awarding attorneys' fees for 7.4 hours of work); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Empire Masonry, LLC*, No. 19-CV-1233, 2019 WL 11270457, at *3 (S.D.N.Y. June 5, 2019) (awarding attorneys' fees for 6.1 hours of work); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Premier Concrete Servs. Inc.*, No. 17-CV-6036, 2018 WL 487299, at *3 (S.D.N.Y. Jan. 18, 2018) (awarding attorneys' fees for 2.4 hours of work).

warranted; an award of $1,452.30 in fees and, as requested by counsel, $682.65 in costs, is appropriate.

As for interest to be applied, Petitioners' requested rate of 9.5 percent, which represents a modest increase from the default rate of nine percent set by N.Y. CPLR § 5004, is proper.  *See* CBA, Art. XVI § 13(a)(2) (providing for interest on the unpaid contributions determined at the prime rate of a designated bank plus two percent); Dkt. 1-9 at 4 (listing the 2025 interest rate of 9.5 percent, which represents the prime lending rate plus two percent); *see also KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 139 (S.D.N.Y. 2021), *aff'd*, No. 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022) (awarding pre-judgment interest rate of four percent until maturity, then nine percent until judgment); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Hera Sports. LLC*, No. 23-CV-10800, 2025 WL 1326998, at *3 (S.D.N.Y. May 7, 2025) (awarding pre-judgment interest rate of 10.5 percent).  Post-judgment interest on the full judgment amount at the statutory rate is also appropriate under 28 U.S.C. § 1961, which applies to "any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); *see also Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004) (post-judgment interest at statutory rate under Section 1961 is mandatory for arbitration awards unless parties contract otherwise).

## CONCLUSION

For the foregoing reasons, the petition to confirm the arbitration Award is GRANTED. The Clerk of Court is respectfully directed to enter judgment for Petitioners in the amount of **$1,330,876.74**, as follows:

- **$1,328,741.79**, reflecting the total unpaid award balance owed to Petitioners, with interest to be calculated at a rate of 9.5 percent from July 2, 2025, through the date of judgment;

- **$1,452.30**, reflecting reasonable attorneys' fees accrued by Petitioners related to the instant Petition; and

- **$682.65**, reflecting reasonable costs accrued by Petitioners related to the filing of the instant Petition.

It is further ordered that the Clerk of Court impose post-judgment interest on the total amount reflected above at the applicable statutory rate.[7]

The Clerk of the Court is further directed to terminate all open motions on the docket and to CLOSE this case.

**SO ORDERED.**

_____

**Date:  April 30, 2026**                                      **VALERIE CAPRONI**
**New York, NY**                                      **United States District Judge**

---

[7]     "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  28 U.S.C. § 1961(a).